UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-80374-CIV-COHN/SELTZER

PHARMA SUPPLY, INC.,

    Plaintiff,

v.

MITCHELL A. STEIN and STEIN LAW, P.C.,

    Defendants.

_____/

## ORDER DENYING MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss Complaint [DE 11]. The Court has reviewed the Motion, Plaintiff's Response [DE 19], Defendants' Reply [DE 20], and the record in this case, and is otherwise advised in the premises. For the reasons discussed herein, the Court will deny the Motion.

## I. BACKGROUND

This action arises from the alleged professional negligence of Defendants Mitchell A. Stein and his law firm, Stein Law, P.C. ("Stein Law"), relating to the representation of a former client, Plaintiff Pharma Supply, Inc. ("Pharma Supply"). In March 2008, a third party, Diagnostic Devices, Inc. ("DDI"), sued Pharma Supply for defamation, illegal competition, and interference with contracts (the "DDI Litigation"). DE 1 ¶ 10.[1] Pharma Supply retained Defendants in April 2009 to represent its interests in the DDI Litigation. Id. ¶ 11. Defendants represented Pharma Supply in the lawsuit until

---

[1] For the purpose of resolving the Motion, the Court adopts as true the facts alleged in Pharma Supply's Complaint. See Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents, 633 F.3d 1297, 1301 n.3 (11th Cir. 2011).

approximately March 12, 2012, when Pharma Supply settled its dispute with DDI. See id. ¶ 33; DE 11-2 at 46.[2] The DDI Litigation was ultimately resolved as to all parties on March 30, 2012. DE 11-2 at 51–52. Pharma Supply paid attorneys' fees and expenses to Defendants throughout the DDI Litigation. DE 1 ¶ 12.

When Pharma Supply retained Defendants, it had an active insurance policy with Zurich/Maryland Casualty ("Zurich") that would have provided coverage and defense in the DDI Litigation. Id. ¶¶ 19–20. Indeed, three years after the commencement of the DDI Litigation and two years after Defendants appeared in the case, Zurich did assume Pharma Supply's defense. Id. ¶ 22. However, Zurich refused to reimburse Pharma Supply for certain fees and expenses already paid to Defendants. Id. ¶ 24.

Pharma Supply contends that when Defendants undertook its defense in the DDI Litigation, they had an obligation to inquire into any relevant insurance policies. Defendants nevertheless failed to review Pharma Supply's insurance policies, and did not notify Pharma Supply's insurers, including Zurich, of the DDI Litigation. Id. ¶¶ 14–16. Later in the DDI Litigation, Defendants did discover the potential for insurance coverage, but still failed to communicate with Zurich. Id. ¶ 18. Finally, after Zurich joined Pharma Supply's defense, Defendants refused to cooperate with Zurich. Id. ¶¶ 22–23. Defendants' lack of cooperation and communication with Zurich motivated Zurich's refusal to reimburse Pharma Supply for amounts previously paid to Defendants. Id. ¶ 24.

---

[2] In resolving a motion dismiss, the Court may take judicial notice of documents filed in other courts for the fact of their filing. See United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994).

Pharma Supply further contends that Defendants did not provide detailed, itemized bills as required by the agreement establishing the representation. Id. ¶ 26. When Pharma Supply demanded more detailed bills, Defendants apparently refused to provide them, and threatened to withdraw as counsel in the DDI Litigation if the bills were not paid. Id. As a result, Pharma Supply alleges that it was forced to pay unreasonable and improper fees and expenses to Defendants. Id. ¶ 27.

Finally, Defendants acquired confidential information from Pharma Supply over the course of the DDI Litigation, including information relating to Pharma Supply's dealings with its co-defendant in that litigation, TaiDoc Technology Corp. ("TaiDoc"). Id. ¶ 34. After the part of the DDI Litigation involving Pharma Supply was settled, Defendants promptly undertook to represent TaiDoc in the same lawsuit. Id. ¶ 35. Defendants accepted the TaiDoc representation without obtaining a conflict waiver from Pharma Supply. Id. Pharma Supply alleges not only that the TaiDoc representation posed an irreconcilable conflict of interest for Defendants, but also that Defendants disclosed Pharma Supply's confidential information to TaiDoc. Id. ¶ 59.

Based upon Defendants' alleged negligence and misconduct, Pharma Supply commenced this action against them on March 17, 2014. Pharma Supply has raised three claims of professional negligence against Stein for his failure to pursue insurance coverage for the DDI Litigation and his lack of cooperation with Zurich, for his improper billing practices, and for undertaking a representation of TaiDoc that posed a conflict of interest. Id. ¶¶ 42–59. Pharma Supply also asserts a claim against both Defendants for money lent, alleging that it advanced funds to Defendants that should have been paid by Zurich, and that it was not reimbursed. Id. ¶¶ 60–64. Finally, Pharma Supply brings a

claim for vicarious liability against Stein Law, alleging that Stein Law is vicariously liable for all of the harms Stein caused. Id. ¶¶ 65–66. Defendants have responded with the Motion, arguing that certain of Pharma Supply's claims are time-barred, seeking to dismiss some claims for failure to state a claim, and contesting personal jurisdiction with respect to Stein. See generally DE 11.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court shall grant a motion to dismiss where the factual allegations of the complaint cannot support the asserted cause of action. Glover v. Liggett Group, Inc., 459 F.3d 1304, 1308 (11th Cir. 2006) (per curiam). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations must give a defendant fair notice of the plaintiff's claims and the grounds upon which they rest. Id. Thus, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

A complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. Twombly, 550 U.S. at 555. A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. Id. A well-pled complaint will survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." Id. at 556 (internal quotation marks omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.

4

## III. DISCUSSION

In the Motion, Defendants argue that the statute of limitations bars certain of Pharma Supply's claims, that Pharma Supply has failed to plead facts supporting its claims, and that this Court cannot exercise personal jurisdiction over Stein. However, the facts as raised in the pleadings and the parties' papers do not clearly establish the sequence of events underlying each count of Pharma Supply's Complaint, and the Court cannot determine at this time that the limitations period has expired with respect to any claim. Moreover, Pharma Supply has alleged sufficient facts to support its claims. Finally, Pharma Supply's Complaint establishes a *prima facie* case of personal jurisdiction over Stein, and Stein has not come forward with sufficient factual materials to require a greater showing by Pharma Supply at this stage of the proceedings. The Court therefore will deny Defendants' Motion in its entirety.

### A. Defendants Have Not Established that the Statute of Limitations Bars Pharma Supply's Professional Negligence Claims

Defendants first argue that Pharma Supply's claims for professional negligence are barred by the applicable statute of limitations. However, neither the Complaint nor the parties' other papers reveal when each of the claims accrued. Therefore, the Court cannot determine at this stage of the proceedings that the statute of limitations bars any of Pharma Supply's claims.

The parties assume in their papers that Florida law governs in this suit. Under Florida law, a two-year statute of limitations applies to claims of an attorney's professional negligence. Fla. Stat. § 95.11(4)(a). A claim accrues when the last element constituting the cause of action occurs. Fla. Stat. § 95.031(1). The elements of an attorney's professional negligence are: (1) the attorney's employment; (2) the attorney's

5

neglect of a reasonable duty; and (3) loss to the client proximately caused by the attorney's negligence. Arrowood Indem. Co. v. Conroy, Simberg, Ganon, Krevans, Abel, Lurvey, Morrow & Schefer, P.A., 134 So. 3d 1079, 1081 (Fla. 4th DCA 2014), review denied, No. SC14-537, 2014 Fla. LEXIS 1508 (Fla. May 2, 2014).

Defendants argue that Counts I and II of the Complaint, relating to insurance coverage for the DDI Litigation and Defendants' billing practices, accrued no later than March 12, 2012, and thus Pharma Supply's filing of the instant suit on March 17, 2014, was untimely as more than two years later. DE 11 at 5. Defendants do not provide any factual support for this contention apart from pointing out that the DDI Litigation was settled with regard to Pharma Supply on March 12, 2012. However, the record in the present case does not make clear that all of the events underlying Counts I and II—such as Defendants' failure to cooperate with Zurich and Pharma Supply's receipt or payment of Defendants' bills—concluded with Pharma Supply's settlement in the DDI Litigation. Because it is unclear when the events relevant to Counts I and II of the Complaint took place, the Court cannot determine that the claims had accrued by the time Pharma Supply settled the DDI Litigation on March 12, 2012.

Defendants also argue that Count III of the Complaint, alleging conflicts of interest arising from the TaiDoc representation and the improper disclosure of Pharma Supply's confidential information, accrued no later than March 13, 2012, when Stein entered an appearance on TaiDoc's behalf in the DDI Litigation. Id. However, the commencement of the TaiDoc representation would appear to be the *earliest* the claim would have accrued; presumably any disclosure of Pharma Supply's confidences to TaiDoc occurred after Defendants took on TaiDoc as a client. Because the record does

6

not reflect when Defendants disclosed Pharma Supply's confidential information to TaiDoc, the Court cannot determine when Pharma Supply suffered harm arising from the allegedly conflicting representations, and when Count III accrued. See Arrowood Indem. Co., 134 So. 3d at 1081.

Pharma Supply, on the other hand, contends that its claims accrued on April 29, 2012. DE 19 at 7. A negligence claim arising from mishandled litigation accrues at the conclusion of the underlying judicial proceeding. Arrowood Indem. Co., 134 So. 3d at 1082. The DDI Litigation was fully resolved as to all parties on March 30, 2012. DE 11-2 at 51. Pharma Supply argues that the outcome of the litigation became final when the time for filing a notice of appeal expired on April 29, 2012. DE 19 at 7. Pharma Supply filed this lawsuit just shy of two years later, on March 17, 2014. DE 1. Pharma Supply thus argues that because it filed suit within two years from the date the resolution of the DDI Litigation became final, its claims relating to its representation by Defendants in that action are timely. DE 19 at 7.

However, Pharma Supply's calculation of the limitations period also misses the mark. A negligence claim relating to mishandled litigation accrues at the conclusion of that litigation because until a final determination of the underlying litigation is reached, any allegation of harm arising from an unfavorable litigation outcome is speculative. Silvestrone v. Edell, 721 So. 2d 1173, 1175 (Fla. 1998). In contrast, Pharma Supply does not allege that its harms in this case arose from a poor outcome in the DDI Litigation. Therefore, when the dismissal of the DDI Litigation became final—as to all parties or just to Pharma Supply—does not resolve when Pharma Supply's harms materialized, or when its claims accrued.

In short, neither the Complaint nor the filings or exhibits relating to the Motion discuss with precision when the events underlying Pharma Supply's claims for professional negligence occurred. Contrary to the arguments of the parties, when the claims accrued cannot be determined by simple reference to the dates of filings and appearances in the DDI Litigation. Because the Court cannot determine on the present record that the statute of limitations bars Pharma Supply's claims, it will deny that portion of the Motion seeking to dismiss Pharma Supply's claims for professional negligence on limitations grounds.

### B. Pharma Supply Has Adequately Pled a Claim for Professional Negligence Relating to Defendants' Failure to Pursue Insurance

Defendants next argue that Pharma Supply has failed to state a claim for professional negligence relating to their failure to pursue insurance coverage from Zurich. A professional negligence claim against an attorney must rest upon a breach of some duty running from the attorney to the client. In order for such a claim to proceed, the lawyer's duties to the client therefore must embrace the acts or omissions supporting the claim. Maillard v. Dowdell, 528 So. 2d 512, 514 (Fla. 3d DCA 1988). Defendants contend that Pharma Supply retained them solely to defend it in the DDI Litigation. DE 11 at 2, 5–7; DE 20 at 2. Defendants argue that pursuing reimbursement from Zurich, Pharma Supply's insurer, fell outside the scope of their clearly defined duties as defense counsel. Defendants conclude that a failure to inquire into Pharma Supply's insurance coverage or cooperate more fully with Zurich breached no duty to Pharma Supply, and cannot support a professional negligence claim. DE 11 at 5–7.

However, Pharma Supply does not allege so narrowly that it retained Defendants to defend it against DDI's claims in the DDI Litigation. Instead, Pharma Supply alleges

that it retained Defendants to "defend its interests" in the suit. DE 1 ¶ 11. Drawing all inferences in Pharma Supply's favor, a duty to "defend [Pharma Supply's] interests" in the DDI Litigation could be construed to impose obligations beyond the simple defense against the merits of DDI's claims. Defense of Pharma Supply's interests could also encompass developing claims against third parties, such as Zurich, who might have an obligation to indemnify Pharma Supply for its expenses or liability in the action. Indeed, though Florida's courts have not taken a firm stance on the issue, some other tribunals have suggested that in certain circumstances a litigation attorney may have a duty to inquire into a client's own insurance coverage as a way to provide for alternative recovery or soften the impact of the litigation. See Jordache Enters., Inc. v. Brobeck, Phleger & Harrison, 958 P.2d 1062, 1065–66, 1071–72 (Cal. 1998) (assuming viability of claim against defense counsel for failure to inquire into client's insurance coverage, but deciding case on other grounds); Little v. Middleton, 401 S.E.2d 751, 754 (Ga. Ct. App. 1991) (holding that plaintiff's attorney in auto accident case may have had duty to advise client regarding possible right of action against client's own insurance carrier). But see Darby & Darby, P.C. v. VSI Int'l, Inc., 268 A.D.2d 270, 272 (N.Y. App. Div. 2000) (finding that "lawyer's duty to advise his client as to all available causes of action or avenues of defense . . . [does not] translate into a broad duty to inquire into all the client's insurance coverage"), aff'd, 739 N.E.2d 744 (N.Y. 2000).

  Nevertheless, the Court need not resolve whether an attorney retained to defend a client from claims in a specific proceeding has an affirmative duty to inquire into the client's insurance coverage. Here, Pharma Supply has not alleged that it retained Defendants only to defend against DDI's claims; instead, it retained counsel to "defend

its interests." DE 1 ¶ 11. Without the benefit of more detail regarding the scope of the attorney-client relationship between Pharma Supply and its lawyers, the Court cannot determine at this time that inquiring into Pharma Supply's insurance coverage fell outside of the scope of the representation. Therefore, to the extent Defendants premise their arguments for dismissal on the lack of a duty to inquire into Pharma Supply's insurance, the Motion will be denied.

### C. Pharma Supply Has Alleged Sufficient Facts to Support Its Claim for Professional Negligence Arising from a Conflict of Interest

Defendants also argue that Pharma Supply has failed to plead facts to support Count III of the Complaint. In Count III, Pharma Supply alleges that Defendants were negligent when they accepted a representation of TaiDoc that posed a conflict of interest, and then disclosed Pharma Supply's confidential information to TaiDoc. DE 1 ¶¶ 56–59. Defendants contend that "[n]owhere does the Complaint give any basis for confidential disclosures and consequences beyond the ordinary representation of a matter and under the tutelage of a Court and Protective Order." DE 11 at 7. However, contrary to Defendants' averments, the Complaint alleges both that Defendants obtained Pharma Supply's confidential proprietary information during the DDI Litigation (DE 1 ¶ 36) and that Defendants wrongfully disclosed this information to TaiDoc, one of Pharma Supply's business partners (id. ¶ 59), over the course of a representation posing a conflict of interest. The Court thus rejects Defendants' suggestion that Count III fails for a lack of allegations regarding the disclosure of confidential information.[3]

---

[3] Defendants also suggest that because the disclosure of confidential information from the DDI Litigation would violate a protective order in that action, Pharma Supply's claim should be before the court overseeing the DDI Litigation. DE 11 at 3. However, Defendants cite no authority for the proposition that where a tort based upon the wrongful disclosure of confidential information is alleged, and the disclosure may

### D. Pharma Supply Has Alleged Sufficient Facts to Support Its Claim for Money Lent

Defendants similarly assert that Pharma Supply has not stated a claim for money lent in Count IV of the Complaint[4] because the funds they received from Pharma Supply were not a loan. DE 11 at 7. A party asserting a cause of action for money lent must plead that (1) money was delivered to the defendant, (2) the money was intended as a loan, and (3) the loan was not repaid when due. Clarke v. Miracle Temple Ministries, Inc., No. 13-1250, 2014 U.S. Dist. LEXIS 39164 at *18 (M.D. Fla. Mar. 5, 2014) (Smith, M.J.), adopted, 2014 U.S. Dist. LEXIS 39209 (M.D. Fla. Mar. 25, 2014). Pharma Supply has alleged that it delivered money to Defendants that was intended as a loan. DE 1 ¶¶ 29–31. This allegation, taken as true as it must be for purposes of a motion to dismiss (see Nat'l Ass'n of Bds. of Pharmacy, 633 F.3d at 1301 n.3), is sufficient to plead the existence of a loan. See Clarke, 2014 U.S. Dist. LEXIS 39164 at *18. Moreover, Defendants' argument that the funds were not a "loan" is based on their contention that the funds represented legal fees. DE 11 at 7. Pharma Supply, however, freely acknowledges that the funds were an advance of attorneys' fees (DE 1 ¶ 29), and Defendants offer no explanation or support for their contention that the use of the funds to cover legal fees precludes them from being characterized as a loan.

Defendants also argue that even if the funds were a loan, Pharma Supply's claim must fail because the loan has not yet come due. In the Complaint, Pharma Supply

---

implicate a tribunal's protective order, only the issuing tribunal may resolve the tort claim.

[4] Pharma Supply's fourth claim, asserting a cause of action for money lent, appears misnumbered in the Complaint as "Count V." DE 1 at 11. For purposes of this Order, the Court will refer to Pharma Supply's claim for money lent as "Count IV."

alleges that Defendants promised to repay the loan "on demand or once Zurich agreed to assume the defense of the DDI Litigation and pay for [Defendants'] fees." DE 1 ¶ 62. Defendants contend that because Zurich has not paid their fees, the conditions precedent to repayment of the loan have not occurred, and the loan is not due. DE 11 at 7 & n.8.

The loan as alleged, however, was due once Zurich had paid the fees *or* on demand. DE 1 ¶ 62. Zurich's payment of the fees thus was not an absolute condition precedent to payment, as Pharma Supply's demand for repayment could also result in the loan coming due. Because Pharma Supply states that it has demanded repayment of the loan, but that Defendants have not repaid the loan (id. ¶ 32), it has sufficiently pled that repayment is overdue per the terms of the loan as alleged.

Pharma Supply has pled that it delivered money to Defendants that was intended as a loan, and that Defendants failed to repay the money when the loan came due. These allegations are sufficient to state a claim for money lent. See Clarke, 2014 U.S. Dist. LEXIS 39164 at *18. The Court thus rejects Defendants' contentions that Pharma Supply has provided insufficient facts to support the elements of the claim.

### E. Pharma Supply Has Adequately Pled Personal Jurisdiction over Stein

Finally, Defendants contest personal jurisdiction only with respect to Stein. Stein does not explicitly state the basis on which he disputes jurisdiction. However, the materials he cites suggest that he argues the absence of sufficient contacts with Florida. Because Pharma Supply has adequately pled a *prima facie* case of personal jurisdiction, the Court rejects Stein's argument. Though a defendant may in certain circumstances require a plaintiff to come forward with proof beyond its pleadings to support the exercise of personal jurisdiction, even at the motion-to-dismiss stage, Stein

has not made the showing necessary to impose this higher burden upon Pharma Supply. The Court therefore will not dismiss Pharma Supply's claims as to Stein for lack of personal jurisdiction at this time.

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). Pharma Supply's suit is founded upon diversity jurisdiction. DE 1 ¶ 1. Personal jurisdiction over a defendant in an action founded upon diversity jurisdiction is determined by reference to the long-arm statute of the state where the Court sits; in this case, Florida. See Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th Cir. 1990). Florida's long-arm statute provides for general personal jurisdiction over a foreign defendant who engages in "substantial and not isolated activity" within the state. Fla. Stat. § 48.193(2). A plaintiff premising jurisdiction on the long-arm statute must also show that the defendant's contacts with Florida are such that traditional notions of fair play and substantial justice will not be offended by subjecting the defendant to suit in the state, as required by the United States Constitution. Cable/Home Commc'n Corp., 902 F.2d at 855.

Pharma Supply alleges that Stein "regularly and continuously transacts business in the State of Florida." DE 1 ¶ 8. This allegation of regular and continuous business activity satisfies the requirement of "substantial . . . activity" necessary to invoke general personal jurisdiction under Florida's long-arm statute. See Woods v. Nova Cos. Belize Ltd., 739 So. 2d 617, 620 (Fla. 4th DCA 1999). Similarly, the exercise of general jurisdiction over a defendant engaged in such substantial business activity comports

with the requirements of constitutional due process. See Planet Bingo, Inc. v. Kerr, No. 10-315, 2011 U.S. Dist. LEXIS 29217 at *8–9 (N.D. Fla. Mar. 8, 2011) (citing Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 n.6 (11th Cir. 2002)). Accordingly, Pharma Supply has adequately pled general personal jurisdiction over Stein.

A defendant contesting personal jurisdiction may require a plaintiff to produce evidence to support its jurisdictional allegations, even at the motion-to-dismiss stage. However, to move the Court's inquiry beyond the contents of the pleadings, a defendant contesting personal jurisdiction must itself file affidavits or other competent evidence controverting the plaintiff's jurisdictional allegations. Meier, 288 F.3d at 1269; Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502–03 (Fla. 1989). Here, Stein has not submitted any affidavits in support of his challenge to personal jurisdiction. In the Motion, Stein—in an argument that appears directed to opposing counsel, and not to persuading the Court of the merit of his position—states that he and opposing counsel have litigated this same issue of personal jurisdiction in another lawsuit, Schooley v. Stein, No. 12-CA-002694 (Fla. 20th Cir. Ct.), that opposing counsel is aware of his legal position, and that "no facts have changed" since the time of the prior lawsuit. DE 11 at 7–8. Notably, Stein has failed to supply the Court with documents from the Schooley action that set forth the specifics of his position. Stein's cryptic assertions regarding other proceedings relating to the disputes among the parties are insufficient to require Pharma Supply to support its jurisdictional allegations with evidence beyond the pleadings. See Meier, 288 F.3d at 1269.

Stein also cites to Frohnhoefer v. Pontin, 958 So. 2d 420 (Fla. 3d DCA 2007), an earlier case in which he was personally involved, to support his assertion that personal

14

jurisdiction is lacking. DE 11 at 7. However, Frohnhoefer is factually distinguishable from the instant case. In Frohnhoefer, a Florida court found in 2007 that Stein's contacts were insufficient to support personal jurisdiction over Stein in Florida, where Stein had acted in his professional capacity as general counsel of a New York corporation doing business in Florida. 958 So. 2d at 422. The Frohnhoefer court considered that because Stein himself had never owned a business in Florida, solicited business on his own behalf in Florida, or performed services in Florida, and had at all relevant times acted only in his professional capacity as a representative of the New York corporation, the plaintiff failed to establish personal jurisdiction over Stein in his individual capacity. Id.

In the present case, however, Stein is alleged to have conducted business in Florida on his own behalf, with a Florida corporation as a client. DE 1 ¶¶ 3, 8. Frohnhoefer, decided on affidavits submitted by Stein and the other parties to that action over seven years ago involving factually distinguishable circumstances, therefore does not resolve whether Stein is properly before the Court in Pharma Supply's instant lawsuit. Stein's arguments against the exercise of personal jurisdiction, unsupported by evidence, are thus insufficient to overcome Pharma Supply's jurisdictional allegations at this early stage of litigation.[5]

---

[5] The parties also dispute the implications of a corporate registration for Stein, Slenn & Kohn, Inc. ("SSK"), a Florida for-profit corporation formed in 2013. In opposition to Stein's personal-jurisdiction arguments, Pharma Supply offers SSK's articles of incorporation, which list Stein as an incorporator and registered agent of SSK. DE 19-3. To become a registered agent of a Florida corporation, an individual must reside in Florida. Fla. Stat. § 607.0501(1)(b)(1). Moreover, the articles of incorporation include both Florida and New York addresses for Stein. DE 19-3. Pharma Supply argues that these papers show that Stein has held himself out as a Florida resident and that he carries on significant business in Florida. DE 19 at 11–12.

Stein counters that he was listed as registered agent of SSK in error. DE 20 at 9. On May 27, 2014, on the day Defendants filed their Reply, Bradley Slenn—defense

## IV. CONCLUSION

In sum, Defendants have failed to show that Pharma Supply's Complaint should be dismissed. Defendants have not established that the statute of limitations bars Pharma Supply's professional-negligence claims. The Court similarly rejects Defendants' arguments that Pharma Supply's claims relating to Defendants' conflict of interest or for money lent fail for a lack of factual allegations. Finally, Stein has not rebutted Pharma Supply's allegations supporting the exercise of personal jurisdiction. It is thereupon

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Complaint [DE 11] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 14th day of August, 2014.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF

---

counsel herein—corrected this purported error by amending SSK's corporate registration to name himself as registered agent. DE 20-3. However, in light of the Court's determination that Stein has failed to rebut the Complaint's jurisdictional allegations, the Court need not address the implications of SSK's corporate filings at this stage of the action.