**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**
WEST PALM BEACH DIVISION

PHARMA SUPPLY, INC.,   　　　　　　　　　　　CASE NO.   14-cv-80374-JIC
　　*Plaintiff*,
v.

MITCHELL STEIN and
STEIN LAW, P.C.,
　　*Defendants*.
_____/

## PHARMA'S MOTION TO DISMISS COUNTERCLAIM

**COMES NOW,** Plaintiff/Counter-Defendant PHARMA SUPPLY, INC. ("Pharma"), by and through its undersigned counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and files this Motion to Dismiss the Defendants' Counterclaim [DE 47], and states:

### I.   INTRODUCTION

The Defendants/Counterclaimants/Third-Party Plaintiffs, Stein Law, P.C., and Mitchell Stein (collectively, "Stein"), have filed a Counterclaim against Pharma and a Third-Party Complaint against various Third-Party Defendants. Although this Motion is filed exclusively on behalf of Pharma, the arguments raised herein apply with equal vitality with respect to the claims made against the Third-Party Defendants, none of which has been served a summons in this case as of this filing.

Pharma moves for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. However, due to the numerous exhibits attached to the Counterclaim/Third-

Party Complaint,[1] factual inaccuracies, mischaracterizations, rank speculation, and, indeed, false statements contained in the Counterclaim, Pharma has attached exhibits which admittedly go beyond the strict four corners of the Counterclaim, where necessary to illustrate for the Court the true nature of the allegations of the Counterclaim, which at times rise to the level of a sham.  The Court, of course, may, on a motion to dismiss, consider documents outside the pleadings that are central to the claimant's case and whose authenticity is not in dispute.  *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).  It is worth noting at the outset that, given Stein's prior statements, Pharma is not surprised by Stein's audacious allegations as this is precisely what Stein threatened to do in the last paragraph of his email.  (*See* correspondence dated Nov. 5, 2009, attached hereto as Exhibit 1.)

Stein has attempted to plead eight counts against Pharma, as follows:

Count I – Breach of Contract;

Count II – Unjust Enrichment;

Count III – Promissory Estoppel;

Count IV – Conversion;

Count V – Fraud;

Count VI – Breach of Fiduciary Duties;

Count VII – Unfair and Deceptive Trade Practices; and

Count VIII – Injunctive Relief.  Pharma moves to dismiss all eight counts, for the reasons which follow.  Moreover, as an initial matter, the Counterclaim should be dismissed in its

---

[1] Stein's sloppy pleading lumps the Counterclaim together with the claims against the Third-Party Defendants.  Hereafter, this Motion will refer to the Counterclaim/Third-Party Complaint as simply the "Counterclaim" or "Countercl."

entirety because it is a paradigm of shotgun pleading.  *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001); *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 365-66 (11th Cir. 1996); *Dennis v. City of N. Miami*, No. 07-cv-22126, 2008 WL 783737 (S.D. Fla. Mar. 21, 2008).  Stein fails to break the Counterclaim into a counterclaim and a third-party complaint and fails to provide guidance as to which of the many rambling allegations are asserted against which parties, with the exception of the two counts (IX and X) that are solely against attorney Schooley and his law firm.

## II.  STANDARD OF DECISION FOR MOTIONS TO DISMISS

Motions under Rule 12(b)(6) challenge the facial sufficiency of the claims asserted.  *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1324 (S.D. Fla. 2012).  To withstand a motion to dismiss, a claimant must make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The allegations must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Facial plausibility is achieved when the facts alleged raise the right to relief above a speculative level.  *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (citing *Twombly*, 550 U.S. at 555-56).  The claimant must plead enough facts to allow the court to draw a reasonable inference that the party against which the claims are made is liable as alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Stein failed to meet its burden and the Counterclaim should be dismissed.

## III.  STEIN'S GENERAL ALLEGATIONS OF A JOINT VENTURE ARE FALSE

Throughout the Counterclaim, Stein refers to the existence of a "venture" of which Pharma, the Third-Party Defendants, and Stein are all presumably members.  The

existence of such venture, which is denied for reasons made more fully apparent below, is the basis and prerequisite of Stein's claims for all the above counts, except for Count IV for conversion. In other words, if the venture as alleged by Stein does not exist, then all of the causes of action listed above, except for Count IV, fail as a matter of law.

The only document that Stein relies upon as a basis of the alleged venture is the CRA (Confidential Representation Agreement) [DE 47-1] (attached hereto as Exhibit 2) between the parties, which Stein drafted when he was retained by Pharma. The CRA recites that Pharma "wishes to engage Firm [(Stein)] as its counsel to provide advice, counseling, negotiation, investigation and other legal services."[2] The CRA describes Stein's duties as "all duties legally justifiable and reasonably related to the Matter, subject to the reasonable instructions of Client." Stein relies on one phrase in section 3.7 of the CRA, which states in its entirety:

> 3.7   <u>Successors and Assigns</u>.  This Agreement cannot be assigned by any party hereto without the express, written consent of all parties hereto; however Firm may assign part or all of its 20% interest (*i.e.*, revenue to stream [sic]) as it sees fit and will advise Client accordingly.

The reference above to a 20% interest is the only basis for Stein's claim to the existence of a joint venture to which he is a party. Close examination of the documents leading to the execution of the CRA Pharma actually signed, and the applicable law, reveal that this reference to a 20% interest was an error, was not intended to form the basis of a joint venture, and cannot be interpreted as such as a matter of law. It is clear

---

[2] This is to be distinguished from an earlier version of the CRA (attached hereto as Exhibit 3), which Stein submitted to Pharma and which defined the scope of engagement much more broadly. Pharma rejected this broader CRA and never executed it.

that no venture involving Stein was ever intended, that Pharma specifically rejected any such concept, and that Stein accepted and acknowledged such rejection in writing.[3]

Further, throughout the Counterclaim, Stein refers to the existence of the CRA. In fact, in paragraph 92, Stein alleges that "[t]he CRA was executed on October 27, 2009, and the 20% interest was thereupon assigned, pursuant to ¶3.7 thereof, to [Mitchell Stein], personally. Both the signing of the CRA and the assignment of the 20% antedated the aforesaid administrative dissolution."[4] (Countercl. [DE 47] ¶ 92.)

The allegations of paragraph 92 concerning assignment of the alleged 20% interest are patently false. The court need only refer to paragraph 12 of Stein's Motion for Reconsideration of Motion to Dismiss, wherein Stein claims that it "discovered" that the CRA was signed by Pharma on October 27, 2009, and "was in place all along" only when Pharma provided discovery responses during July 2014. (Mot. for Recon. [DE 44] ¶ 12.) Taking Stein at its word in the Motion for Reconsideration, the Counterclaim allegations cannot be true. Stein cannot have made the assignment to Mitchell Stein or taken <u>any</u> action whatsoever in reliance on and in furtherance of the purported joint venture. Stein never even knew that the CRA had been signed by Pharma until July 2014. Moreover, Stein submitted to Pharma a "global plan" after the global plan attached to the Counterclaim [DE 47 ¶ 126 & DE 47-18] was rejected by Pharma. (Later global

---

[3] *See* correspondence dated October 28, 2009, attached hereto as Exhibit 4. In this correspondence, <u>a day after</u> Stein alleges the CRA was signed, Stein submitted to Pharma a CRA (which Pharma, in fact, subsequently did execute) that omits language from the earlier, rejected CRA that described a role for Stein other than as a provider of legal services.

[4] Stein Law, P.C., was administratively dissolved by the State of New York on October 28, 2009.

plan attached hereto as Exhibit 5.)  Stein is conspicuously absent from this revised global plan.

In fact, the inclusion of the reference to a 20% interest in the signed CRA (Ex. 2), from Pharma's perspective appears to be simple error.  It is a remnant from the earlier CRA (Ex. 3), which Pharma rejected, in which Stein attempted to arrogate to itself a role beyond legal counsel.  Again, Pharma rejected (and Stein accepted and acknowledged such rejection) any such role for Stein.  To the minimal extent that the inclusion of the 20% language can be said to create an ambiguity, any such ambiguity must be construed against Stein, the drafter.  *See Garcia v. Am. Gen. Life Ins. Co. of N.Y.*, 695 N.Y.S.2d 420, 421 (N.Y. App. Div. 1999).

It is clear that there is no basis for a finding of the existence of a joint venture including Stein, as a matter of law.  A joint venture requires the existence of an agreement between the parties to the venture, and such agreement must evidence an intent to create the joint adventure.  The elements of a joint venture are: (1) an agreement manifesting the intent of the parties to associate as joint venturers; (2) mutual contribution to the joint undertaking – which may combine property, money, effort, skill, or knowledge; (3) joint proprietorship and control; and (4) sharing of profits and losses.  *Clarke v. Sky Express, Inc.*, 989 N.Y.S.2d 87, 88 (N.Y. App. Div. 2014) (citations omitted); *Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*, 765 N.Y.S.2d 575, 584 (N.Y. App. Div. 2003) (citations omitted).[5]

---

[5] Pharma cites New York law here because the only document that Stein relies on to support the purported joint venture, the CRA, by its terms at section 3.4, is governed by and is to be construed under New York law.  Pharma notes that Florida law is essentially the same.  *See Jackson-Shaw Co. v. Jacksonville Aviation Auth.*, 8 So. 3d 1076, 1089 (Fla. 2008) (holding that joint venture must arise from contract containing following

The essential element of a joint venture is intention of the parties to form such a venture. Here, it is clear that Pharma never intended, and expressly rejected a joint venture with Stein for any purpose. (*Compare* Ex. 2 *with* Ex 3.) Moreover, Stein expressly acknowledged that no such venture existed, and apologized for his exuberant overreaching. (Ex. 4.) Even more telling is Stein's email (Ex. 1) threatening the very action he has taken herein, implicitly acknowledging that the Counterclaim is baseless, and intended only to threaten, intimidate and harass.

Just as damning to the existence of the purported joint venture – and, thus, to the Counterclaim – is the fact that Stein has not alleged and the CRA does not provide for any sharing of losses. Under even the most charitable possible reading, the CRA merely makes reference to an otherwise undefined revenue stream. An agreement to distribute proceeds cannot, standing alone, establish a joint venture. *Gold Mech. Contractors, Inc. v. Lloyds Bank P.L.C.*, 602 N.Y.S.2d 136, 137 (N.Y. App. Div. 1993). There can be no joint venture in the absence of a provision for sharing losses. *Kaufman v. Torkan*, 859 N.Y.S.2d 253, 255 (N.Y. App. Div. 2008). An agreement to share the burden of loss is essential to the formation of a joint venture. *Needel v. Flaum*, 670 N.Y.S.2d 285, 286 (N.Y. App. Div. 1998) (citations omitted). Stein has alleged no such loss-sharing provision.

Because no venture involving Stein ever existed, Counts 1, 2, 3, 5, 6, 7, & 8 must fail as a matter of law.

---

elements: (1) community of interest in performance of common purpose, (2) joint control or right of control, (3) joint proprietary interest, (4) right to share in profits, and (5) duty to share losses).

## IV. STEIN'S CLAIM FOR CONVERSION MUST FAIL AS MONEY CAN NOT BE CONVERTED

"It is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis for conversion or civil theft." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008). "For money to be the subject of conversion there must be an obligation to keep intact or deliver the specific money in question, so that money can be identified." *Id.* at 1056 (internal quotation omitted). Money can be the subject of conversion where there is a special deposit or where a specific account is wrongfully obtained. *Belford Trucking Co. v. Zagar*, 243 So.2d 646, 648 (Fla. 4th DCA 1970).

In *Walker v. Figarola*, 59 So. 3d 188, 190 (Fla. 3d DCA 2011), the court held that where parties have a contractual relationship, the tort of conversion must go beyond the simple act of not paying a debt. For a cause of action to lie, there must be an obligation to keep intact and deliver specific money in question so that it can be specifically identified. *Id.* Thus, in Walker, the court held that a borrower's failure to repay a lender did not constitute conversion. *Id.* at 190-91. Similarly, in *Rosen v. Marlin*, 486 So. 2d 623, 625-26 (Fla 3d DCA 1986), relying on *Belford Trucking*, supra, the court held that money held in a bank account to which both parties were owners in a joint venture a cause of action for conversion did not lie where one of the members of the venture unilaterally withdrew money from the account.

Here, in paragraph 138 of the Counterclaim, which is incorporated into Count IV (for conversion), Stein alleges that the money he alleges was converted would be paid to him "either via reimbursement from Zurich, via indemnification or offset from TaiDoc, or, failing that, by the individual members themselves (including Suess, a named party in the

DDI Case and clearly the major beneficiary of SL's work product.)" (Countercl. [DE 47] ¶ 138.) Thus, according to Stein's own pleadings, Stein acknowledges that there is no specific, identifiable sum of money on deposit or account, and that he could have been paid what he is allegedly due – which Pharma denies – in a variety of ways. If anything, Stein's claim, if properly pleaded may be stated for breach of contract, but not conversion.

## V.   CONCLUSION

Stein's Counterclaim must be dismissed. No joint venture, the foundation for Counts 1 through 3 and 5 through 8, ever existed. Nor has Stein adequately pleaded a cause of action for conversion in Count 4.

September 23, 2014                             Respectfully submitted,

/s/ Domingo C. Rodriguez
Domingo C. Rodriguez, Esq. (FBN 394645)
domingo@rslawmiami.com
Sarah D. Schooley, Esq. (FBN 10083)
sarah@rslawmiami.com
**Rodriguez Schooley Law Firm, LLC**
2121 Ponce de Leon Blvd., Suite 430
Miami, Florida 33134
Tel: (305) 774-1477 ~ Fax: (305) 774-1075
*Counsel for Plaintiff*


James P. Schooley, Esq. (FBN 572470)
schooleylaw@att.net
**Schooley & Assoc., Inc.**
2322 SE 8th Street
Cape Coral, Florida 33990
Tel: (239) 574-3450 ~ Fax: (239) 574-3453
*Co-Counsel for Plaintiff*

### Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing was provided on September 23, 2014, via CM/ECF, to all parties or counsel of record on the Service List below.

/s/ Domingo C. Rodriguez
Domingo C. Rodriguez, Esq.

## SERVICE LIST

Bradley R. Slenn, Esq.
STEIN LAW, P.C.
24 Woodbine Ave., Ste. 4
Northport, NY 11768