UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-80374-CIV-COHN/SELTZER

PHARMA SUPPLY, INC.,

    Plaintiff,

v.

MITCHELL A. STEIN and STEIN LAW, P.C.,

    Defendants,

v.

FRANK SUESS, STEVEN THUSS, OLIVER SUESS, NATIONAL HOME RESPIRATORY SERVICES, INC. d/b/a DIABETIC SUPPORT PROGRAM, DIABETIC SUPPLY OF SUNCOAST, INC., JAMES P. SCHOOLEY, ESQ., SCHOOLEY & ASSOCIATES, INC., DIGITAL E-TECHNOLOGIES, INC., and DOES 1 through 5,

    Third-Party Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendants' Motion for Reconsideration of Defendants' Motion to Dismiss Complaint [DE 44] ("Motion"), as amended by the Amendment to Converted Motion for Summary Judgment [DE 55]. The Court has reviewed the Motion and the record in this case, and is otherwise advised in the premises. For the reasons discussed herein, the Court will grant summary judgment for Defendants on Counts III and IV of the Complaint, and will deny the Motion in all other respects.

I. **BACKGROUND**

This action arises from the alleged professional negligence of Defendant Mitchell A. Stein and his law firm, Stein Law, P.C. ("Stein Law"), relating to the representation of a former client, Plaintiff Pharma Supply, Inc. ("Pharma Supply"). In March 2008, a third party, Diagnostic Devices, Inc. ("DDI"), sued Pharma Supply for defamation, illegal competition, and interference with contracts (the "DDI Litigation"). DE 1 (Complaint) ¶ 10. Pharma Supply engaged Defendants in April 2009 to protect its interests in the DDI Litigation. Id. ¶ 11. Defendants represented Pharma Supply in the DDI Litigation through its resolution in March 2012. Id. ¶ 12; DE 55 at 5.

When Pharma Supply retained Defendants for the DDI Litigation, it had an active insurance policy with Zurich/Maryland Casualty ("Zurich"). Compl. ¶¶ 19–20. Pharma Supply alleges that Defendants failed to review its insurance policy and did not notify Zurich of the pendency of the DDI Litigation or cooperate with Zurich. Id. ¶¶ 14–23. Pharma Supply contends that Defendants' lack of cooperation and communication with Zurich caused Zurich to refuse to reimburse Pharma Supply for Defendants' legal fees. Id. ¶ 24.

Pharma Supply also alleges that Defendants engaged in improper billing practices and disclosed its confidential information to a co-defendant in the DDI Litigation, TaiDoc Technology Corp. ("TaiDoc"). Id. ¶¶ 34, 59. On the basis of Defendants' alleged failure to facilitate reimbursement from Zurich, their improper billing practices, and the disclosure of Pharma Supply's confidences, Pharma Supply has asserted three claims of professional negligence against Stein. Id. ¶¶ 42–59. Pharma Supply also asserts a claim against both Defendants for money lent, alleging that it advanced funds to Defendants that should have been paid by Zurich, and has not

2

received reimbursement. Id. ¶¶ 60–64. Finally, Pharma Supply brings a claim for vicarious liability against Stein Law, alleging that Stein Law is vicariously liable for all of the harms Stein caused. Id. ¶¶ 65–66.

Defendants responded to the Complaint by moving to dismiss on April 22, 2014. DE 11. The Court denied the motion to dismiss on August 14, 2014. DE 39. But on August 28, 2014, having had the benefit of some discovery, Defendants filed the instant Motion—supported with evidence—seeking reconsideration of the Court's ruling. DE 44. Because the Motion raised new arguments for dismissal of Pharma Supply's claims and relied on evidence outside the pleadings, the Court converted the Motion into one for summary judgment and directed the parties to supplement the record accordingly. DE 46. Now that briefing is complete, the Court turns to the merits of Defendants' arguments for summary judgment.

## II. LEGAL STANDARD

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that "there is an absence of evidence to support the nonmoving party's case." Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith

3

Radio Corp., 475 U.S. 574, 586 (1986). As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Therefore, the non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576–77 (11th Cir. 1990). In deciding a summary-judgment motion, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006).

## III. DISCUSSION

Defendants seek summary judgment on each of Pharma Supply's claims. The bulk of Defendants' arguments relate to a settlement that Zurich and Pharma Supply executed in July 2013. See DE 44 at 24–34 ("Zurich Settlement"). In the Zurich Settlement, Pharma Supply released its claims against Zurich relating to the DDI Litigation, including any claims for reimbursement of Defendants' fees. Id. § 2.A. In exchange, Zurich paid Pharma Supply and related parties $605,000. Id. § 3. Defendants argue that this arrangement had the collateral effect of discharging any liability they may have had on Counts I and II for professional negligence based upon unreasonable legal fees paid by Pharma Supply.

Defendants also contend that a Confidential Representation Agreement dated October 27, 2012 (DE 44 at 16–19 ("CRA")), bars Pharma Supply's claim for professional negligence arising from a failure to provide detailed invoices in Count II. In the CRA, Stein Law agreed to provide Pharma Supply with "consolidated monthly billing

4

statement[s]." CRA § 2.2. Nowhere does the CRA expressly require the itemized billing to which Pharma Supply claims it was entitled. Defendants maintain that the CRA thus shows Count II to be meritless.

With regard to Count III, for Stein's alleged disclosure of Pharma Supply's confidential information to TaiDoc, Defendants contend that the record reflects a total absence of evidence to show either that Stein disclosed Pharma Supply's confidences to TaiDoc or that Pharma Supply suffered any damages as a result. Finally, Defendants argue that Pharma Supply's own records show that it has already recouped the sums at issue in Count IV.[1]

Upon review of the briefs and evidence submitted by the parties, the Court determines that Defendants have not established their entitlement to summary judgment on Counts I and II. Defendants have not shown that the Zurich Settlement, by its express terms or otherwise, bars the claims in those Counts. Nor is it clear that the terms of the CRA apply to the representation at issue in Count II. The Court thus will deny Defendants' Motion as it pertains to Counts I and II.

However, Pharma Supply has produced no evidence in support of its contention in Count III that Defendants disclosed its confidences to TaiDoc. And with regard to Count IV, Pharma Supply now concedes that the loan it seeks to collect from Defendants has already been repaid. Accordingly, Defendants are entitled to summary judgment on Counts III and IV.

---

[1] Pharma Supply's fourth claim, asserting a cause of action for money lent, appears misnumbered in the Complaint as "Count V." Compl. at 11. For purposes of this Order, the Court will refer to Pharma Supply's claim for money lent as "Count IV."

5

### A. Defendants Have Not Shown that the Zurich Settlement Bars Count I

Pharma Supply claims in Count I that it was harmed when Defendants' conduct caused its insurer, Zurich, to refuse reimbursement for legal fees Pharma Supply incurred in the DDI Litigation. See Compl. ¶¶ 42–51. In the Motion, Defendants argue that Pharma Supply forfeited its claim based upon this failure of reimbursement when it executed the Zurich Settlement. But the Zurich Settlement does not by its terms release any of Pharma Supply's claims against Defendants. Nor have Defendants established that the releases in the Zurich Settlement otherwise discharge Pharma Supply's claims against them. Though funds Pharma Supply received as a result of the Zurich Settlement may reduce the damages available on Count I, Defendants have not clearly shown that these funds have made Pharma Supply whole for the legal fees at issue. Defendants thus have not satisfied their burden of establishing that the Zurich Settlement entitles them to summary judgment on Count I.[2]

Defendants first suggest that the language of the Zurich Settlement releases any claims Pharma Supply might have against them. DE 44 at 4–5. The Zurich Settlement does contain a handful of releases, including some releases relating to claims for reimbursement of Defendants' fees. Zurich Settlement § 2.A. But the releases of Pharma Supply's claims pertain only to its claims against Zurich. Id. The Settlement's terms do not expressly release Pharma Supply's claims against Defendants.

---

[2] Defendants also argue that Count I fails as a matter of law because they had "no duty to cooperate with Zurich as admitted by Pharma [Supply] in its mediation statement." DE 55 at 9. Defendants cite to the mediation statement in its entirety for Pharma Supply's "admission." But upon review of the mediation statement (see DE 44 at 49–52), the Court perceives no such sweeping admission.

6

Defendants further contend that, even if the Zurich Settlement's terms did not contain an express release of the claim in Count I, Pharma Supply forfeited that claim all the same. DE 44 at 8. Defendants note that under Florida law,[3] an initial tortfeasor may be liable for injuries caused by a subsequent tortfeasor who aggravates the initial injury. See Underwriters at Lloyds v. City of Lauderdale Lakes, 382 So. 2d 702, 703–04 (Fla. 1980). When a plaintiff settles his claim against an initial tortfeasor, the plaintiff is presumed to have been made whole for any resulting injuries. See Broz v. Rodriguez, 891 So. 2d 1205, 1208 (Fla. 4th DCA 2005). A settlement with an initial tortfeasor therefore will bar the plaintiff from further recovery against a subsequent tortfeasor, unless the settlement specifically excludes from its scope claims against a subsequent tortfeasor. Id.

Defendants imply that though their negligence might have resulted in Zurich refusing to reimburse Pharma Supply, Zurich also acted wrongfully in refusing to reimburse. Defendants reason that Zurich is thus a tortfeasor with shared responsibility for the amounts Pharma Supply was forced to pay in legal fees, and which form the basis for Count I. In other words, Defendants characterize Zurich as a joint tortfeasor. Defendants conclude that because Pharma Supply settled its reimbursement dispute with Zurich without expressly preserving its claims against Defendants, the rule discussed in Broz results in a presumption that Pharma Supply was made whole for the legal fees it paid, extinguishing the claim in Count I. DE 44 at 8–11.

The cases Defendants cite on this point arise in the context of apportioning liability for personal injuries among an initial tortfeasor and a subsequent tortfeasor who

---

[3] The parties appear to agree in their papers that Florida law governs Pharma Supply's claims for professional negligence. See DE 44 at 8; DE 69 at 4–5.

7

aggravated a plaintiff's injuries through medical malpractice. See id. at 8 (citing Vanalstine v. Palms W. Hosp., L.P., 90 So. 3d 990 (Fla. 4th DCA 2012) (per curiam); Univ. of Miami v. Francois, 76 So. 3d 360 (Fla. 3d DCA 2011); Broz, 891 So. 2d 1205). These precedents thus are of questionable relevance in the instant case involving a claim for legal malpractice and a discrete dispute between Pharma Supply and its own insurer over the extent of coverage.

But even applying the general principle that a release of one tortfeasor may also discharge the liability of joint tortfeasors (see Boone v. Atl. Coast Line Rr. Co., 85 So. 2d 834, 840–41 (Fla. 1956)), Defendants have not shown that Zurich should rightly be classified as a joint tortfeasor. Whether parties are joint tortfeasors is a question of fact. Ins. Co. of N. Am. v. Edmondson, 354 So. 2d 887, 888 (Fla. 1st DCA 1977) (per curiam). Pharma Supply argues in its Opposition that its settlement with Zurich related to a purely contractual dispute. DE 69 at 6. Defendants counter that the Zurich Settlement purports to release Zurich from not only contract claims, but also tort claims that would overlap with any harms of Defendants' making. DE 80 at 3–4.

The record as it stands, however, contains insufficient information about the nature of the dispute between Pharma Supply and Zurich to allow the Court to find as a matter of law that Zurich and Defendants were joint tortfeasors, or that a release relating to one of them would function as a release of both for any tort claims relating to Defendants' legal fees. The Court therefore determines that Defendants have not

8

established their entitlement to summary judgment on Count I based upon the releases contained within the Zurich Settlement.[4]

However, it bears noting that the Zurich Settlement may impact the damages Pharma Supply can recover on Count I. Pharma Supply alleges in that Count that Defendants' actions resulted in Zurich refusing to reimburse Pharma Supply for Defendants' fees. Compl. ¶ 51. In other words, the extent of damages claimed in Count I is the amount of "unreimbursed attorneys' fees paid by [Pharma Supply to Defendants]." Id.

To the extent payments made under the Zurich Settlement relate to fees charged by Defendants, they reduce the amount of damages at issue in Count I. However, the total fees Pharma Supply paid to Defendants and the amount of funds from the Zurich Settlement devoted to those fees are ambiguous on the present record. Defendants assert that Zurich paid the entirety of the $605,000 settlement "expressly designated solely for [Defendants'] fees" (DE 55 at 10), but the materials they rely upon do not reflect this designation. Further, though Defendants discuss in their papers a number of payments and invoices pertaining to their legal fees (see id. at 11–12), it is unclear whether those amounts paint a full picture of the dealings among the parties. Accordingly, the impact of payments made under the Zurich Settlement on the amounts Pharma Supply can recover on Count I raises a factual issue inappropriate for resolution by summary judgment.

---

[4] The Court similarly rejects Defendants' parallel argument based on the Zurich Settlement with regard to Count II.

### B. Defendants Have Not Shown that the CRA Bars Count II

In Count II, Pharma Supply alleges that Stein acted negligently by providing billing statements that did not conform to the requirements set forth in the representation agreement between the parties relating to the DDI Litigation. Compl. ¶¶ 26, 52–55. Pharma Supply alleges, among other things, that Stein "agree[d] to provide detailed itemized billing." Id. ¶ 53. Pharma Supply contends that Stein breached this obligation by refusing to provide detailed billing statements, and also by acting unreasonably in connection with billing disputes. Id. ¶ 54.

Defendants counter that the CRA between the parties shows Count II to be factually baseless. The CRA provides that Defendants should "provide to [Pharma Supply] a consolidated monthly billing statement setting forth the work that has been performed . . . ." CRA § 2.2. Nowhere does the CRA specifically require itemized billing. Defendants argue that the CRA thus demonstrates the absence of any such obligation.

However, the CRA also states at its outset that it pertains to Pharma Supply's engagement of Stein Law as counsel in connection with the "design, development, manufacturing and sale of products, including blood glucose meters and test strips." Id. at 1. It provides that this engagement is "independent from the prior relationship between the parties." Id.

Defendants acknowledge that they began to represent Pharma Supply with regard to the DDI Litigation in April 2009, months before the execution of the CRA. DE 55 at 4. The CRA thus does not appear to apply to Defendants' involvement in the DDI Litigation, which was part of the parties' "prior relationship" that the CRA's terms

10

exclude from its scope. Instead, the CRA describes a distinct representation relating to the development and marketing of new products.[5]

Count II is premised on Stein's alleged billing failures in connection with the DDI Litigation. Stein relies solely upon the CRA to show that he breached no duty of itemized billing. But the CRA does not appear to relate to the DDI Litigation, and therefore does not resolve the extent of Stein's duties in the representation at issue in Count II. Accordingly, the Court will deny the Motion as it pertains to Count II. See Celotex Corp., 477 U.S. at 323.

---

[5] Defendants argue that Pharma Supply should be judicially estopped from arguing that the CRA did not apply to the DDI Litigation. Judicial estoppel will generally arise where: (1) a party has taken a position clearly inconsistent with an earlier position; (2) the party succeeded in persuading a court to accept the earlier position, so that acceptance of the new position would give the impression that one of the courts was misled; and (3) the party advancing the inconsistent positions would gain an unfair advantage. Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002). Defendants contend that Pharma Supply asserted in a related case, Stein Law, P.C. v. Suess, No. 14-269 (W.D.N.C.) (the "North Carolina Case"), that the CRA applied to the DDI Litigation, precluding a contrary position herein. DE 80 at 5.

But as Defendants acknowledge, Pharma Supply did not convince the court in the North Carolina Case that the CRA pertained to the DDI Litigation. Instead, Defendants themselves agreed that the CRA governed their representation of Pharma Supply in the DDI Litigation, and amended their pleadings accordingly. See id. at 5 nn. 4–5. Any changes in the posture of the North Carolina Case arising from the existence of the CRA thus resulted from Defendants' own actions, not Pharma Supply's success in persuading the court to adopt its position. Success in persuading a court of the merits of one's prior arguments is an important element of judicial estoppel, as it gives rise to the risk of inconsistent determinations and implicates the integrity of the judicial process. See Sandlin v. Ameriquest Mortg. Co. (In re Sandlin), No. 08-00191, 2010 WL 1416699 at *14 (Bankr. N.D. Ala. Apr. 8, 2010) (citing New Hampshire v. Maine, 532 U.S. 742, 750–51 (2001)). But because Pharma Supply did not obtain a ruling in the North Carolina Case regarding the applicability of the CRA, and instead obtained only Defendants' acquiescence on the matter, this Court finds that judicial estoppel does not bar Pharma Supply from taking a contrary position in this action. See Burnes, 291 F.3d at 1285.

### C. Count III Fails for Lack of Evidence of <u>Disclosure of Pharma Supply's Confidences</u>

In Count III, Pharma Supply alleges that Stein obtained its confidential business information during the DDI Litigation, then wrongfully disclosed this information to TaiDoc. Pharma Supply contends that as a result, it lost competitive advantages in its relationship with TaiDoc. Compl. ¶¶ 57–59. Defendants respond that Pharma Supply has produced no evidence that any confidential information was ever disclosed, or that it suffered any harms from such disclosure. DE 55 at 14–15. The Court agrees with Defendants, and will grant summary judgment in their favor on Count III.

Where the nonmoving party bears the burden of proof at trial, the moving party may show the absence of a genuine issue of material fact by pointing to the lack of evidence supporting an element of the nonmoving party's case. <u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004). To survive summary judgment, the nonmoving party must then produce "evidence sufficient to withstand a directed verdict motion." <u>Id.</u>

Causation and damages are elements of a claim for an attorney's professional negligence, such as the claim contained in Count III. <u>Witko v. Menotte</u> (<u>In re Witko</u>), 374 F.3d 1040, 1043–44 (11th Cir. 2004). Defendants argue that Count III fails because Pharma Supply has produced no evidence that they disclosed Pharma Supply's confidences to TaiDoc, or that such disclosure caused Pharma Supply any damages. To survive summary judgment on this point, Pharma Supply therefore must come forward with some evidence of the wrongful disclosure and resulting injury. See <u>Hickson Corp.</u>, 357 F.3d at 1260.

In response to Defendants' contention that Count III fails for a lack of evidence, Pharma Supply argues that Defendants' representation of Pharma Supply gives rise to a presumption that they obtained its confidential information. Pharma Supply also suggests that if Defendants were dissatisfied with its discovery responses relating to the issue of damages, they could have moved to compel better responses. DE 69 at 12.[6]

But Pharma Supply's Opposition ignores the applicable legal standard. Defendants have argued the total absence of evidence of damages arising from any disclosure of Pharma Supply's confidential information. As the party that bears the burden of proving its case at trial, Pharma Supply was required to respond with evidence of harms it suffered as a result of Stein's disclosure of its confidential information to TaiDoc. See Hickson Corp., 357 F.3d at 1260. In its papers, however, Pharma Supply does not attempt to provide any evidence that Stein disclosed its confidential information to TaiDoc, or that it was harmed by such disclosures. Because Pharma Supply has produced no evidence to support its claim that Stein caused the damages it alleges in Count III, Stein is entitled to judgment as a matter of law on that Count. See McCaleb v. A.O. Smith Corp., 200 F.3d 747, 753 (11th Cir. 2000) (affirming

---

[6] Pharma Supply further argues that the Court should not consider Defendants' arguments on Count III because they were raised for the first time in Defendants' Amendment to Converted Motion for Summary Judgment [DE 55]. When the Court converted Defendants' motion for reconsideration into one seeking summary judgment, it directed Defendants to supplement the record, but did not explicitly grant leave to raise new grounds for dismissal. DE 69 at 2 n.3. Pharma Supply thus argues that arguments first appearing in the Amendment should be disregarded. However, Pharma Supply plainly had notice of—and an opportunity to respond to—the handful of additional arguments raised in the Amendment, as illustrated by the substantive responses on those points in its Opposition. Cf. Massey v. Congress Life Ins. Co., 116 F.3d 1414, 1417–18 (11th Cir. 1997) (discussing necessity of notice and opportunity to respond in summary-judgment briefing). Perceiving no unfair prejudice to Pharma Supply from the addition of arguments in Defendants' Amendment to the Motion, the Court will consider those arguments as they relate to Count III.

grant of summary judgment where record contained no evidence linking defendant's acts to injuries suffered by plaintiff).

### D. Pharma Supply Concedes that Judgment Is Proper on Count IV

In Count IV, Pharma Supply asserts a cause of action against both Defendants for money lent. A plaintiff with a claim for money lent must plead and prove: "(1) money was delivered to the defendant, (2) the money was intended as a loan, and (3) the loan has not been repaid." Wane v. Loan Corp., 926 F. Supp. 2d 1312, 1324 (M.D. Fla. 2013) (internal quotation marks omitted), aff'd, 552 F. App'x 908 (11th Cir. 2014) (per curiam). In the Complaint, Pharma Supply alleges that it loaned Defendants $88,507.65 as an advance of attorneys' fees, which Defendants represented would be repaid by Zurich. Compl. ¶¶ 61, 63. Pharma Supply alleges that it never recouped these funds. Id. ¶ 64. However, Defendants have submitted documents in support of their Motion purporting to illustrate that Zurich did pay these amounts to Pharma Supply as promised. See DE 47-2 at 16–18. In response, Pharma Supply concedes that it was repaid the money it loaned to Defendants. DE 69 at 12. Accordingly, the Court will grant judgment in Defendants' favor on Count IV.

## IV. CONCLUSION

It is accordingly **ORDERED AND ADJUDGED** that Defendants' Motion for Reconsideration of Defendants' Motion to Dismiss Complaint [DE 44], as amended by the Amendment to Converted Motion for Summary Judgment [DE 55], is **GRANTED in part** and **DENIED in part** as follows:

1. Summary judgment is hereby **GRANTED** in Defendants' favor with regard to Counts III and IV of the Complaint [DE 1].
2. Defendants' Motion is **DENIED** in all other respects.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 26th day of January, 2015.

*James I. Cohn*
JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF