UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-80374-CIV-COHN/SELTZER

PHARMA SUPPLY, INC.,

      Plaintiff,

v.

MITCHELL A. STEIN and STEIN LAW, P.C.,

      Defendants,

v.

FRANK SUESS, STEVEN THUSS, OLIVER
SUESS, NATIONAL HOME RESPIRATORY
SERVICES, INC. d/b/a DIABETIC SUPPORT
PROGRAM, DIABETIC SUPPLY OF
SUNCOAST, INC., JAMES P. SCHOOLEY,
ESQ., SCHOOLEY & ASSOCIATES, INC.,
DIGITAL E-TECHNOLOGIES, INC., and
DOES 1 through 5,

      Third-Party Defendants.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

      **THIS CAUSE** is before the Court upon Plaintiff and Third-Party Defendants'

Motion for Summary Judgment [DE 220] and Defendants' Motion for Summary

Judgment [DE 221]. The Court has reviewed the Motions, the submissions of the parties

in connection therewith, and is otherwise advised in the premises. For the reasons

discussed herein, the Motions will be granted in part and denied in part.

**I.**  **BACKGROUND**

      This action finds its origin in the relationship between Plaintiff Pharma Supply,

Inc. ("Pharma Supply") and its former lawyer, Defendant Mitchell A. Stein. In 2009,

Pharma Supply retained Stein and his law firm, Stein Law, P.C. ("Stein Law," together with Stein, the "Stein Parties"), to defend them in a lawsuit by a third party, Diagnostic Devices, Inc. ("DDI"). DDI had sued Pharma Supply in 2008 in the United States District Court for the Western District of North Carolina for defamation, illegal competition, and interference with contracts. DE 1 (Complaint) ¶ 10; see also Diagnostic Devices, Inc. v. Pharma Supply, Inc., No. 08-00149 (W.D.N.C.) ("DDI Litigation"). The Stein Parties represented Pharma Supply in the DDI Litigation from April 2009 until a stipulation of dismissal between Pharma Supply and DDI was filed on March 12, 2012.

When Pharma Supply retained the Stein Parties in connection with the DDI Litigation, it had an active insurance policy with Zurich/Maryland Casualty ("Zurich"). Compl. ¶¶ 19–20. Pharma Supply contends that it paid the Stein Parties $806,330.86 for legal fees in the DDI Litigation. DE 220-1 ¶ 11. However, Pharma supply alleges that the Stein Parties failed to notify Zurich of the DDI Litigation or to cooperate with Zurich, resulting in Zurich's refusal to reimburse Pharma Supply for a large portion of the Stein Parties' fees. Compl. ¶¶ 14–23, 41–51. On this basis, Pharma Supply has asserted a claim of professional negligence against the Stein Parties. Id. ¶¶ 41–51, 65–66. Pharma Supply also has raised a claim for professional negligence based upon the Stein Parties' allegedly improper billing practices during the DDI Litigation. Id. ¶¶ 52–55.[1]

The Stein Parties have reacted to Pharma Supply's Complaint with claims of their own. The Stein Parties' allegations involve two intertwined threads of misconduct by Pharma Supply and the many Third-Party Defendants (together with Pharma Supply,

---

[1] Though Pharma Supply asserted additional causes of action against the Stein Parties based upon alleged conflicts of interest and an unpaid loan (Compl. ¶¶ 56–64), the Court has granted summary judgment in the Stein Parties' favor on those claims. DE 120 at 12–14.

the "Counterclaim Defendants"). <u>See generally</u> DE 131 at 11–60 ("Counterclaim"). The

first thread of the Stein Parties' allegations relates to the DDI Litigation. By the end of

the DDI Litigation, Pharma Supply and certain of its principals supposedly owed the

Stein Parties nearly $2 million in legal fees and expenses. <u>Id.</u> ¶ 158. Pharma Supply

refused to pay the fees, and directed the Stein Parties to first try to collect from its

insurer, Zurich. <u>Id.</u> ¶ 159. Zurich also refused to pay. <u>Id.</u> ¶ 160. The Stein Parties thus

pursued reimbursement of the fees from Zurich through February 2013. <u>Id.</u> ¶¶ 162, 165.

However, on February 11, 2013, the Stein Parties received a letter from Pharma

Supply terminating their representation of the company. <u>Id.</u> ¶ 165; <u>see also</u> DE 131-12.

The letter informed the Stein Parties that Third-Party Defendant James P. Schooley

would represent Pharma Supply in the future. Pharma Supply wrote: "It is our desire

that you render Mr. Schooley every possible assistance as Pharma moves to recover

the significant outstanding legal expenses owed to Pharma and you from Zurich."

As a result of this letter, the Stein Parties ceased all collection activities on

Pharma Supply's behalf. Counterclaim ¶ 168. The Stein Parties remained under the

impression that Schooley and Pharma Supply would continue to aggressively pursue

reimbursement from Zurich, and expected to recover the legal fees they were still owed.

<u>Id.</u>

In July 2013, Schooley and Pharma Supply reached a settlement with Zurich.

DE 131-2 at 5–15 ("Zurich Settlement"). The Zurich Settlement—negotiated without the

Stein Parties' knowledge—resulted in a payment to Pharma Supply of $605,000.

Counterclaim ¶ 171. Though the payment was intended at least in part to cover the

Stein Parties' fees, Pharma Supply and Schooley did not remit any of the settlement

funds to the Stein Parties. Id. ¶ 173. To date, the Stein Parties contend that they have not been compensated in full for their work on the DDI Litigation. Id. ¶ 177.

The second thread of wrongdoing alleged in the Counterclaim relates to what the Stein Parties refer to as the "Venture." In 2009, Pharma Supply and a number of the Third-Party Defendants desired to create a business for the design, manufacture, licensing, and sale of medical devices. Id. ¶ 123. For this purpose, they formed the Venture. Id. The Stein Parties were not members of the Venture, however they assisted in forming and operating the Venture. Id. ¶ 125. The Stein Parties allege that they were promised legal fees and a 20% interest in the Venture's revenue in exchange for their services. Id. The Stein Parties contend that they have not received full payment of their fees, and that they have received no part of the Venture's revenues. E.g., id. ¶¶ 138, 218(h). The Stein Parties also allege that the members of the Venture have threatened their 20% interest by wasting the Venture's money on frivolous lawsuits (id. ¶ 178) and engaging in false advertising of medical products (id. ¶¶ 179–215).

On the basis of their uncompensated work for the DDI Litigation and the Venture, the Stein Parties have asserted claims against the Counterclaim Defendants for breach of contract, unjust enrichment, promissory estoppel, conversion, fraud, breach of fiduciary duty, unfair and deceptive trade practices, and injunctive relief. Id. ¶¶ 216–84. The Stein Parties also have asserted claims for tortious interference with contract and legal malpractice against Schooley and his law firm, Schooley & Associates, Inc., on the basis of Schooley's involvement with the wrongs the Stein Parties have allegedly suffered. Id. ¶¶ 285–97.

Now before the Court are the parties' crossing motions for summary judgment on their claims and defenses. The Court will address each Motion in turn.

## II.  <u>LEGAL STANDARD</u>

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that "there is an absence of evidence to support the nonmoving party's case." <u>Id.</u> at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Therefore, the non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." <u>Walker v. Darby</u>, 911 F.2d 1573, 1576–77 (11th Cir. 1990). In deciding a summary-judgment motion, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. <u>Davis v. Williams</u>, 451 F.3d 759, 763 (11th Cir. 2006).

### III.   COUNTERCLAIM DEFENDANTS' MOTION
### FOR SUMMARY JUDGMENT [DE 220]

#### A.  The Stein Parties' Contract Claim Survives to the
#### Extent It Rests Upon Fees from the DDI Litigation

In this Motion, the Counterclaim Defendants first argue that Stein's claim for breach of contract based upon unpaid fees from the DDI Litigation fails as a matter of law. DE 220 at 1–3. The Counterclaim Defendants assert that the Stein Parties cannot prevail on a claim for unpaid fees arising from the DDI Litigation because a portion of Stein's invoices were not "proper" and constituted "block billing," which resulted in charges that were "unreasonable, unprofessional, and excessive." Id. at 2.

However, the Counterclaim Defendants reference no legal authority in support of their contention that the alleged flaws in Stein's invoices wholly relieve them of their obligation to pay for the services represented by those invoices. Accordingly, the Counterclaim Defendants have not carried their burden of establishing their entitlement to judgment on the Stein Parties' claim for breach of contract based upon unpaid fees from the DDI Litigation.[2]

#### B.  The Stein Parties Have Provided No Evidence of
#### Damages Relating to Disclosure of Work Product

The Counterclaim Defendants next argue that the Stein Parties' contract claim fails to the extent it rests upon the disclosure of work product. DE 220 at 3. On October

---

[2] The Counterclaim Defendants seek judgment with respect to the Stein Parties' claims for unjust enrichment, promissory estoppel, and breach of fiduciary duty on a similar theory: that the Stein Parties have been paid for "[a]ll of the legal services *properly billed*." DE 220 at 4–6 (emphasis added). The Counterclaim Defendants again cite no legal authority in support of their contention that improper billing would absolve them of all duty to pay. This Motion therefore also will be denied to the extent it relates to the Stein Parties' pursuit of attorneys' fees on theories of unjust enrichment, promissory estoppel, or breach of fiduciary duty.

27, 2009, Stein Law and Pharma Supply executed a Confidential Representation Agreement ("CRA"). Counterclaim ¶ 126; DE 131-1 (CRA). In the CRA, Pharma Supply agreed to keep the CRA's terms confidential, and to preserve the confidentiality of Stein Law's work product. CRA § 3.1. In the Counterclaim, the Stein Parties allege that the Counterclaim Defendants breached their duties under the CRA by publicly disclosing Stein Law's work product. Counterclaim ¶ 218(g).

The Counterclaim Defendants argue that this part of the Stein Parties' contract claim fails because they have not improperly disclosed the Stein Parties' work product. See DE 220 at 3. The CRA is governed by New York law. CRA § 3.4. Under New York law, the elements of a claim for breach of contract are: (1) a valid contract; (2) the plaintiff's performance under the contract or excuse for nonperformance; (3) a material breach; and (4) resulting damages. Hampshire Props. v. BTA Bldg. & Dev., Inc., 122 A.D.3d 573, 573 (N.Y. App. Div. 2014). Absent evidence of a breach and resulting damages, the Counterclaim Defendants argue that they are entitled to summary judgment on the claim under the CRA.

In opposition to the Motion, the Stein Parties contend that the Counterclaim Defendants have disclosed Stein Law's confidential work product by filing it on the public docket in this action. DE 236 at 6–7. But even accepting that the filings in these proceedings reflect a breach of the CRA, this does not address the question of damages. The Stein Parties' papers on this point are confusing, and fail to direct the Court to evidence of damages sufficient to create a jury question. The Stein Parties write: "[T]o assert that [the Stein Parties] have not been damaged flies in the face of

[Pharma Supply's] claims of [Stein Law's] alleged 'delinquence' in failing to timely chase down Zurich." DE 236 at 7.

Moreover, the damages the Stein Parties seek on their cause of action under the CRA appear limited $1,110,634.22 in unpaid legal fees and $12.9 million in Venture revenues. See Counterclaim at 56–59 & ¶¶ 87, 223–24. These damages are wholly unrelated to any filing of the Stein Parties' work product on the public docket in this action. The Stein Parties have failed to come forward with any evidence of damages relating to their claim under the CRA for the disclosure of work product, and the Counterclaim Defendants are entitled to summary judgment on that claim. See Ojeda v. Louisville Ladder Inc., 410 F. App'x 213, 214–16 (11th Cir. 2010) (per curiam).

### C.  The Stein Parties Have Failed to Provide Evidence of Their Entitlement to 20% of the Venture's Revenues

The Counterclaim Defendants next argue that the Stein Parties' claims for unjust enrichment, promissory estoppel, breach of fiduciary duty, and deceptive and unfair trade practices fail to the extent they rest upon Stein's contention that he was promised a 20% interest in the Venture's revenues.[3] DE 220 at 4–8. The Counterclaim Defendants have provided affidavits of Pharma Supply's officers stating that Stein was never promised the 20% interest. See DE 220-2 ¶¶ 19–25; DE 220-22 ¶¶ 5–6.

The Stein Parties have responded by pointing to e-mails which reflect that Stein assisted Pharma Supply in implementing its business plans. See DE 236 at 8–9. However, these materials are insufficient to create an issue of fact as to whether the Stein Parties were promised a 20% interest in Venture revenues in exchange for this

---

[3] The Court has already dismissed the Stein Parties' claims relating to the 20% interest to the extent they rested upon a breach-of-contract theory. DE 215 at 14–16.

assistance. Even Stein's Declaration in opposition to the Counterclaim Defendants' Motion—though obliquely referencing "[Stein's] promised 20% revenue share in the Venture" (DE 235 ¶ 35)—fails to state affirmatively that anyone promised either of the Stein Parties a share of the Venture's revenue.[4]

Because the Counterclaim Defendants have provided evidence that the Stein Parties were not promised 20% of the Venture's revenues, and because the Stein Parties have not come forward with evidence to rebut this showing, the Court will grant summary judgment in the Counterclaim Defendants' favor on the Stein Parties' claims for unjust enrichment, promissory estoppel, and breach of fiduciary duty to the extent they rest upon the alleged 20% interest. See Ojeda, 410 F. App'x at 214–16. The Court also will grant summary judgment against the Stein Parties on their claim for unfair and deceptive trade practices under North Carolina law, which derives solely from their alleged interest in Venture revenues. See Counterclaim ¶¶ 274–80.

### D. The Counterclaim Defendants Are Entitled to Judgment on the Stein Parties' Conversion Claim

In the fourth count of the Counterclaim, the Stein Parties assert that the Counterclaim Defendants converted two amounts of money: (1) a $605,000 check from Zurich; and (2) $510,000 in discounts Pharma Supply received from a co-defendant in the DDI Litigation, Taidoc. Counterclaim ¶¶ 243–50. In a prior order, the Court dismissed the conversion claim to the extent it rested upon the discounts from Taidoc.

---

[4] In the Counterclaim, the only specific allegation of a promise to pay the 20% interest related to the CRA. See Counterclaim ¶¶ 12, 218(h). The Court has already rejected the Stein Parties' contention that the CRA gave rise to such an interest. DE 215 at 16.

DE 215 at 21–23. The Counterclaim Defendants now seek judgment on the remainder of the claim, relating to the check from Zurich.

In the Counterclaim, the Stein Parties alleged that the $605,000 check from Zurich was a "specific and identifiable payment to and for [the Stein Parties'] incurred but unpaid legal fees and expenses . . . [and that the Counterclaim Defendants] had an obligation to keep intact and hold the $605,000 for delivery to [the Stein Parties]." Counterclaim ¶¶ 244–45. However, faced with the evidence as developed through discovery, the Stein Parties have now adopted a different characterization of their claim.

The check at issue was made out to Schooley & Associates in connection with the Zurich Settlement. See DE 131-2 at 2. The Zurich Settlement describes the payment as one for the benefit of Pharma Supply, National Home, Frank Suess, Oliver Suess, and Steven Thuss, as fulfillment of Zurich's obligations to those individuals arising from the DDI Litigation. Id. at 5, 7–8. Communications between Pharma Supply and Schooley reflect that at one point, they set aside money from the check for the payment of Pharma Supply's debts to the Stein Parties. Id. at 16; see also DE 125-4 ¶ 5. The Stein Parties now contend that they were entitled to this portion of the check proceeds, thus the funds were "converted" when Pharma Supply and Schooley ultimately decided not to remit the money to them. DE 221 at 18–20.

The Stein Parties' arguments reveal that the check proceeds are not the proper subject of a conversion claim. As the Court has previously noted, a conversion claim must be premised upon an entitlement to possession of an identifiable res. See DE 215 at 22–23. The Stein Parties sufficiently alleged this aspect of their conversion claim when they asserted that the Counterclaim Defendants "had an obligation to keep intact

and hold the $605,000 for delivery to the [Stein Parties]." See Counterclaim ¶ 245. However, the Stein Parties have abandoned their contention that they were entitled to delivery of the check from Zurich. See DE 221 at 17–20; DE 236 at 9–11. Instead, they argue simply that the funds should have been used for payment of the legal fees Pharma Supply owed them. Though the Stein Parties couch this argument in terms of their "right to possession" of the specific monies, they offer no legal support for this characterization.

In the Counterclaim, the Stein Parties alleged that the Counterclaim Defendants had a legal obligation to keep intact and deliver to them the proceeds of the $605,000 check from Zurich. Counterclaim ¶¶ 244–45. The Stein Parties have now abandoned this contention, and instead argue that the Counterclaim Defendants should have used part of the proceeds to satisfy Pharma Supply's debt to the Stein Parties. Where a controversy is based upon an obligation for the payment of a debt, as contrasted with the deprivation of a right to possess a specific res, a conversion claim will not lie. E.g., Belford Trucking Co. v. Zagar, 243 So. 2d 646, 648–49 (Fla. 4th DCA 1970). Because it is evident that the Stein Parties now proceed upon a claim for a garden-variety debt, their claim for conversion fails as a matter of law. Accordingly, the Counterclaim Defendants are entitled to summary judgment on the Stein Parties' claim for conversion to the extent it rests upon the check from Zurich.

### E.  The Stein Parties Have Submitted Insufficient Evidence of False Promises to Support Their Fraud Claim

The Counterclaim also contains a cause of action for fraud. In a prior order, the Court dismissed the fraud claim except to the extent it rested upon the February 11, 2013, letter in which Pharma Supply terminated the Stein Parties as its counsel. DE 215

at 23–25. In that letter, Pharma Supply, acting through its officers Oliver Suess, Frank Suess, and Steven Thuss, wrote: "It is our desire that you render Mr. Schooley every possible assistance as Pharma moves to recover the significant outstanding legal expenses owed to Pharma and you from Zurich." DE 131-12. The Stein Parties allege that this statement was a fraudulent promise by Pharma Supply to collect their outstanding legal fees from Zurich, which was intended to cause the Stein Parties to forbear from seeking reimbursement of those fees. Counterclaim ¶¶ 163–68, 252.

However, a promise may support a claim for fraud only if false when made. Mejia v. Jurich, 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001); Abernathy-Thomas Eng'g Co. v. Pall Corp., 103 F. Supp. 2d 582, 596 (E.D.N.Y. 2000). The Counterclaim Defendants dispute that Pharma Supply's statement of intent to collect the Stein Parties' fees from Zurich was false at the time of the February 11, 2013, letter. Instead, the Counterclaim Defendants have provided statements of Pharma Supply's officers and Schooley that they did pursue the Stein Parties' fees from Zurich subsequent to February 2013, and that Stein's own failure to cooperate contributed to Pharma Supply's eventual inability to recover the fees. See DE 220-2 ¶¶ 34–36; DE 220-14 ¶¶ 13–18. The burden thus shifts back to the Stein Parties to respond with materials sufficient to create an issue for trial regarding the falsity of Pharma Supply's statements in the letter. See Walker, 911 F.2d at 1576–77.

The Stein Parties attempt to make this showing by reference to a statement in Schooley's Affidavit that he "never intended Stein or [other attorneys who had worked for Pharma Supply] to be a third party beneficiary of [Schooley's] efforts on Pharma's

behalf." DE 220-14 ¶ 14. The Stein Parties argue that this statement illustrates the contemporaneous falsity of the promise in the February 11 letter.

However, the letter contains only representations by Pharma Supply and its officers—not Schooley. Schooley's intent at the time of the letter therefore does not speak directly to the intent of the parties who actually made the promise alleged to be false. Moreover, a reading of Schooley's Affidavit reflects that the portion cited by the Stein Parties discusses Schooley's impressions regarding the identity of the client he had undertaken to represent. Schooley's statement that he did not intend Stein to be a third-party beneficiary of his efforts merely reflects his view that Pharma Supply, not Stein, was his client. See id. ("My duty was to Pharma only."). However, in that same paragraph within his Affidavit, Schooley states that he was in fact charged with recovering as much as possible from Zurich, including the legal fees that Pharma Supply might still owe to Stein. Schooley's statement in his affidavit therefore is insufficient to give rise to a triable question of whether Pharma Supply's statement in the February 11, 2013, letter—that it would try to recover the Stein Parties' legal fees from Zurich—was false. Because the Stein Parties rely upon no other evidence as suggesting the contemporaneous falsity of the statement, the Counterclaim Defendants are entitled to summary judgment on the Stein Parties' fraud claim.

### F.  The Stein Parties Have Not Shown Unjustified Interference Necessary to Their Tortious Interference Claim

The Counterclaim Defendants next seek summary judgment on the Stein Parties' claim for tortious interference with contract against Schooley and his firm. In the Counterclaim, the Stein Parties allege that Schooley interfered with their contractual relationship with Pharma Supply and its principals. Counterclaim ¶¶ 285–90. Under

Florida law, the elements of such a claim are: (1) the existence of a contract; (2) knowledge of the contract on the part of the defendant; (3) an intentional and unjustified interference with the contract by the defendant; and (4) resulting damage to the plaintiff. Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994).[5] The Counterclaim Defendants argue, among other things, that the Stein Parties have produced no evidence that any unjustified interference by Schooley impacted the contractual relationship between the Stein Parties and Pharma Supply. Rather, the Counterclaim Defendants assert that Pharma Supply's decision to fire Stein and hire Schooley was motivated by Pharma Supply's dissatisfaction with Stein. See DE 220-2 ¶¶ 30–33; DE 220-14 ¶¶ 11–12.

In response to the Motion, the Stein Parties argue that the evidence reflects that Schooley sought to woo Pharma Supply away from them. DE 236 at 17–18. However, an action for tortious interference will not generally lie for a competitor's interference with a contract terminable at will such as Stein enjoyed with Pharma Supply. See In re Maxxim Med. Grp., Inc., 434 B.R. 660, 688 (Bankr. M.D. Fla. 2010). "This is so because when a contract is terminable at will there is only an expectancy that the relationship will continue. In such a situation, a competitor has a privilege of interference in order to acquire the business for himself." Greenberg v. Mount Sinai Med. Ctr. of Greater Miami, Inc., 629 So. 2d 252, 255 (Fla. 3d DCA 1993). A party therefore can only succeed on a tortious interference claim against a competitor where the interference was independently wrongful or unlawful. Metzler v. Bear Auto. Serv. Equip. Co., 19 F. Supp. 2d 1345, 1364 (S.D. Fla. 1998).

---

[5] The parties have agreed in earlier papers that Florida law governs this claim. See DE 149 at 18; DE 185 at 23–24.

The Counterclaim Defendants have provided evidence that Pharma Supply hired Schooley because they were dissatisfied with the Stein Parties' performance, and because Schooley provided Pharma Supply with a more attractive alternative. They have also provided affidavits reflecting that Schooley did not engage in any untoward acts in obtaining Pharma Supply's business. These facts are sufficient to establish that any interference by Schooley in the Stein Parties' relationship with Pharma Supply was privileged as lawful competition. The Stein Parties have failed to rebut this showing with any evidence that Schooley acted wrongfully in obtaining Pharma Supply's business. Accordingly, the Court will grant summary judgment for Schooley and his firm on the Stein Parties' claim for tortious interference.

### G.  The Counterclaim Defendants Have Failed to Show Entitlement to Judgment on the Stein Parties' Malpractice Claim

The Stein Parties proceed on their malpractice claim under a theory that they were third-party beneficiaries to the Pharma Supply-Schooley representation. To prove a claim for an attorney's negligence under a third-party-beneficiary theory, a plaintiff must show: (1) a contract for legal representation; (2) an intent that the contract primarily and directly benefit the plaintiff; (3) breach of the contract; and (4) resulting damages to the plaintiff. Dingle v. Dellinger, 134 So. 3d 484, 487 (Fla. 5th DCA), rev. denied, 153 So. 3d 903 (Fla. 2014). The Counterclaim Defendants argue that there is an absence of evidence that Schooley ever intended that his representation of Pharma Supply in pursuit of fees from Zurich would directly benefit the Stein Parties. DE 220 at 11.

However, communications among the parties reflect that Schooley worked to recover from Zurich fees which the Stein Parties had billed to Pharma Supply, but which

Pharma Supply had not actually paid. <u>See, e.g.</u>, DE 220-19 at 1. In other words, Schooley sought to recover money from Zurich that would be paid not only to Pharma Supply, but also to the Stein Parties. These facts give rise to a jury question regarding whether Schooley and Pharma Supply intended that Schooley's work directly benefit the Stein Parties, and also whether the Stein Parties were reasonable in relying on Schooley to recover their outstanding fees from Zurich. Accordingly, summary judgment on the Stein Parties' malpractice claim against Schooley and his firm will be denied.

### H.  Pharma Supply Has Not Established Its Entitlement to Judgment on Its Malpractice Claim Against the Stein Parties

Finally, Pharma Supply seeks judgment in its favor on its malpractice claims against the Stein Parties. Pharma Supply cites a lengthy passage from the report of its expert, Joshua D. Lerner, in support of the argument that its inability to recover some of the fees it incurred during the DDI Litigation resulted from the Stein Parties' failure to pursue coverage from or cooperate with Zurich. DE 220 at 13–15. However, as noted by the Stein Parties (<u>see</u> DE 221 at 8–9), Pharma Supply settled and released its claims for reimbursement against Zurich with the assistance of other counsel. These facts present a jury question regarding whether the Stein Parties' negligence or the acts of parties involved in the settlement with Zurich were the proximate cause of Pharma Supply's failure to recover the full amount of the attorneys' fees expended during the DDI Litigation. <u>See</u> <u>Chipman v. Chonin</u>, 597 So. 2d 363, 364 (Fla. 3d DCA 1992). Accordingly, this prong of the Motion will be denied.

## IV.  THE STEIN PARTIES' MOTION FOR SUMMARY JUDGMENT [DE 221]

In their Motion, the Stein Parties seek judgment on Pharma Supply's claims against them for professional negligence. The Stein Parties also demand summary

judgment in their favor on their claims against the Counterclaim Defendants for conversion, and on the issue of their status as third-party beneficiaries of the attorney-client relationship between Pharma Supply and Schooley. The Counterclaim Defendants have responded substantively to the Stein Parties' arguments. However, the Counterclaim Defendants also take issue with the Stein Parties' procedural failures in connection with the Motion, including that the Motion exceeds the applicable page limits and does not include a statement of material facts, in violation of the Court's local rules. DE 234 at 4–6.

The Court prefers not to deny summary judgment on the basis of technical violations of the local rules, because summary-judgment motions often serve a valuable function of clarifying and narrowing issues for trial. However, the Stein Parties have shown repeated disregard for the Court's local rules, with the effect of real prejudice to the Counterclaim Defendants, who have frequently been required to respond to late and non-conforming papers. To alleviate this prejudice and remind the Stein Parties that they must comply with the local rules unless otherwise ordered by the Court, the Court will disregard those portions of the Stein Parties' memorandum of law in excess of the length permitted by the local rules: 20 pages. See S.D. Fla. L.R. 7.1(c).[6] The Court now turns to the remainder of the Stein Parties' arguments.

_____

[6] However, the Court will not strike the Stein Parties' day-late papers in opposition to the Counterclaim Defendants' request for summary judgment. The Counterclaim Defendants' Motion to Strike Defendants' Response to Plaintiff and Third-Party Defendants' Motion for Summary Judgment [DE 237] and Motion to Strike Additional Untimely Documents [DE 242], which also raise the untimeliness of the Stein Parties' papers, therefore will be denied. The Court further notes that a ruling on the Counterclaim Defendants' request in the Motion to Strike Additional Untimely Documents that certain late-produced materials be excluded from the Court's consideration is unnecessary at this time, as those documents have proved immaterial

### A.  The Stein Parties Have Not Established Their Entitlement to Summary Judgment on Count I of Pharma Supply's Complaint

The Stein Parties first raise several arguments as to why the Court should grant summary judgment in their favor on Count I of Pharma Supply's Complaint, which alleges malpractice resulting in Zurich's refusal to compensate Pharma Supply for the legal fees it paid to the Stein Parties in connection with the DDI Litigation. None of these arguments carry the day, and the Stein Parties' request for summary judgment on Count I will be denied.

The Stein Parties first argue that Count I is barred by the statute of limitations under Florida law. Florida law imposes a two-year statute of limitations on actions for legal malpractice. Fla. Stat. § 95.11(4)(a). "A legal malpractice action has three elements: 1) the attorney's employment; 2) the attorney's neglect of a reasonable duty; and 3) the attorney's negligence as the proximate cause of loss to the client." Larson & Larson, P.A. v. TSE Indus., Inc., 22 So. 3d 36, 39 (Fla. 2009) (internal quotation marks omitted). A cause of action for malpractice accrues when the last event giving rise to the claim occurs. See Fla. Stat. § 95.031(1).

The damages alleged in Count I stem in part from the Stein Parties' ineffective efforts in aiding Pharma Supply to obtain reimbursement for fees incurred during the DDI Litigation from Zurich. See Compl. ¶¶ 43–48. These efforts to obtain reimbursement from Zurich continued well beyond the end of the DDI Litigation. See DE 220-4. Pharma Supply sought the Stein Parties' cooperation in obtaining reimbursement from Zurich

---

to the resolution of the parties' arguments for summary judgment. The Court will revisit the issue of untimely disclosures in resolving the Counterclaim Defendants' Motion *In Limine* to Exclude All Untimely Produced Documents [DE 249] relating to the use of those documents at trial.

through at least March 2013 (see DE 220-14 ¶ 16), and Pharma Supply and Zurich did not resolve the reimbursement dispute until their July 2013 settlement. See DE 131-2. Pharma Supply's damages in Count I, relating to Zurich's refusal to reimburse Pharma Supply for the legal fees, were not realized until this settlement was concluded. Cf. Larson & Larson, P.A., 22 So. 3d at 47–48 (discussing accrual of malpractice claims for litigation-related harms arising at different times during proceedings). Therefore, Pharma Supply's cause of action based upon the Stein Parties' failure to obtain reimbursement from Zurich did not accrue until 2013, and the March 2014 filing of the instant suit was within the two-year limitations period.

The Stein Parties next argue that Pharma Supply has suffered no damages capable of supporting the malpractice claim. Pharma Supply settled its dispute with Zurich for $605,000. DE 131-2. The Stein Parties contend that this sum was greater than the unreimbursed fees Pharma Supply had paid to them for representation in the DDI Litigation. The Stein Parties conclude that because Pharma Supply has been fully reimbursed in the amount of the legal fees it paid, its malpractice claim fails for lack of damages.

However, Pharma Supply has submitted evidence that only a small portion of the Zurich settlement—$129,707.29—was devoted to reimbursement for the Stein Parties' fees. DE 220-2 ¶ 49. In contrast, even the Stein Parties acknowledge that Pharma Supply had paid them as much as $556,330.86 in legal fees for which there had been no reimbursement prior to the Zurich settlement. See DE 221 at 8. A question of fact therefore remains as to whether the Zurich settlement compensated Pharma Supply to the full extent of the fees it had paid.

Finally, the Stein Parties argue that they are entitled to summary judgment on Count I because they had no legal obligation to pursue reimbursement from Zurich, and because Pharma Supply actively prevented them from seeking reimbursement from Zurich. DE 221 at 13–17. The Stein Parties' papers on these points suffers from several flaws. First, they cite no legal authority whatsoever for their various assertions regarding their legal duties to pursue coverage from Pharma Supply's insurer. See id. The Court will not perform for the Stein Parties their task of demonstrating how the law as applied to the facts calls for a given result. See, e.g., McCollough Enters., LLC v. Marvin Windows & Doors, No. 09-0573, 2010 WL 5014670 at *5 n.15 (S.D. Ala. Dec. 2, 2010) ("Again, this Court's role on summary judgment is not to articulate and develop either side's legal arguments.").

Second, the Stein Parties mischaracterize portions of the record. For example, when asserting that Pharma Supply "explicitly and specifically directed [Stein Law] not to sue Zurich" (DE 221 at 17), the Stein Parties attribute the following quote to Pharma Supply's representatives: "Now, would you have me lodge ANOTHER suit, so we can complain about MORE legal fees with no real end game strategy? No." Id. However, Stein himself actually wrote these words in an April 2011 e-mail to Thuss. DE 217-5 at 2. On the other hand, a series of e-mails between the parties reflect that Stein and Pharma Supply continued to pursue reimbursement from Zurich together through at least 2012. See DE 220-5. The Stein Parties thus have not established that Pharma Supply prevented them from pursuing reimbursement of attorneys' fees from Zurich such that they would be absolved of any duty to aid pursuit of the fees. The Stein

Parties' request for summary judgment on Count I of Pharma Supply's Complaint will be denied.

### B.  The Statute of Limitations Bars Count II of the Complaint

The Stein Parties also seek summary judgment with regard to Count II of Pharma Supply's Complaint. As with Count I, the Stein Parties argue that the claim is barred by the two-year statute of limitations for legal malpractice actions. The Court agrees, and will grant summary judgment for the Stein Parties on this claim.

In Count II, Pharma Supply alleges that the Stein Parties engaged in improper billing practices during the DDI Litigation. Compl. ¶ 53. Pharma Supply contends that the Stein Parties provided unacceptably conclusory invoices and threatened to withdraw as counsel unless the invoices were paid. Id. ¶ 54. Pharma Supply asserts that it suffered damages when it was forced to pay unreasonable fees during the DDI Litigation, and also that the disputes initiated by the Stein Parties negatively impacted Pharma Supply's interests in the DDI Litigation. Id. ¶ 55.

As previously noted, the applicable statute of limitations for legal malpractice is two years. See Fla. Stat. § 95.11(4)(a).[7] A cause of action for malpractice accrues when the last event giving rise to the claim occurs. Fla. Stat. § 95.031(1). The Stein Parties maintain that the events allegedly giving rise to the legal malpractice claim in Count II occurred, at the latest, when the DDI Litigation was settled with respect to Pharma Supply. DE 221 at 4. DDI and Pharma Supply filed their stipulation of dismissal in the DDI Litigation on March 12, 2012. DDI Litigation, DE 235. Pharma Supply did not commence the instant lawsuit until March 17, 2014, more than two years later. See

---

[7] The parties agree that Florida law governs the malpractice claims. See DE 221 at 3; DE 234 at 7–8.

DE 1. The Stein Parties argue that Pharma Supply thus failed to bring suit within the limitations period, and Count II fails as a matter of law.

Pharma Supply counters that, though its Stipulation of Dismissal in the DDI Litigation was filed on March 12, 2012, the district court did not enter an order dismissing that action until March 30, 2012. DE 234 at 7. Pharma Supply contends that a cause of action for legal malpractice relating to a lawsuit does not accrue until the resolution of the suit has become final. DE 234 at 7 (citing Arrowood Indem. Co. v. Conroy, Simberg, Ganon, Krevans, Abel, Lurvey, Morrow & Schefer P.A., 134 So. 3d 1079, 1082 (Fla. 4th DCA 2014)). Pharma Supply further argues that a district court's order of dismissal is not "final" until the time for filing an appeal—30 days after entry of the order (Fed. R. App. P. 4(a)(1)(A))—has expired. Pharma Supply reasons that the malpractice claim in Count II did not accrue until 30 days after the district court entered its March 30, 2012, order resolving the DDI Litigation. It follows that because Pharma Supply commenced this suit on March 17, 2014, its claim would be timely as within the two-year limitations period.

Pharma Supply is correct that, under Florida law, a claim for legal malpractice arising during litigation generally accrues when the resolution of the underlying suit becomes final. See Arrowood Indem. Co., 134 So. 3d at 1082. However, the resolution of the DDI Litigation became final with respect to Pharma Supply on March 12, 2012, when Pharma Supply was dismissed from the case.

On March 12, 2012, DDI and Pharma Supply filed a stipulation for voluntary dismissal under Rule 41(a)(1)(A)(ii) and (a)(2) of the Federal Rules of Civil Procedure. See DDI Litigation, DE 235. Though a request for dismissal under Rule 41(a)(2) does

not resolve an action until approved by the court, a Rule 41(a)(1)(A)(ii) stipulation is effective upon filing, without the need for a subsequent court order. E.g., 9 Charles Alan Wright, et al., Federal Practice & Procedure § 2363 (Westlaw 3d ed. 2015). The district court in the DDI Litigation plainly viewed the March 12, 2012, stipulation under Rule 41(a)(1)(A)(ii) as effective to dismiss the case as to Pharma Supply, because the court administratively terminated Pharma Supply as a party in its CM/ECF system on that date, and appears to have entered no further order with respect to the claims against Pharma Supply. On the other hand, the March 30, 2012, order which Pharma Supply considers to have terminated the DDI Litigation pertained only to claims between DDI and a handful of Pharma Supply's co-defendants, and makes no reference to Pharma Supply. See DDI Litigation, DE 262.

Though a court order may not become final until the time for appeal from the order has lapsed, a stipulated voluntary dismissal presents a different situation. Except in circumstances not relevant here, a party cannot appeal from a voluntary dismissal. See, e.g., Ballard v. Madden, 73 F. App'x 519, 520–21 (2d Cir. 2003); Hartz & Co. v. Prod. Control Info. (PCI) Ltd., 70 F.3d 112 (4th Cir. 1995).The stipulated voluntary dismissal of the DDI Litigation with respect to Pharma Supply under Rule 41(a)(1)(A)(ii) therefore was effective and final the day it was filed: March 12, 2012. Any claim by Pharma Supply for legal malpractice taking place within the DDI Litigation accrued on that date. See Arrowood Indem. Co., 134 So. 3d at 1082. This includes the cause of action contained within Count II of the Complaint, which rests upon the

unreasonableness of fees paid during the DDI Litigation and harm to Pharma Supply's interests in the DDI Litigation resulting from fee disputes. See Compl. ¶¶ 53–55.[8]

Because a two-year statute of limitations applies to the malpractice claim in Count II, Pharma Supply was required to file the claim no later than March 12, 2014. However, Pharma Supply did not commence this action until March 17, 2014. Accordingly, Count II is barred by the statute of limitations.

## V.   CONCLUSION

It is accordingly **ORDERED AND ADJUDGED** that Plaintiff and Third-Party Defendants' Motion for Summary Judgment [DE 220] is **GRANTED in part and DENIED in part** as follows:

1.  Summary judgment is **GRANTED** in Plaintiff and Third-Party Defendants' favor on the Stein Parties' claim for breach of contract to the extent premised upon the disclosure of work product.

2.  Summary judgment is **GRANTED** in Plaintiff and Third-Party Defendants' favor on all aspects of the Stein Parties' claims premised upon a 20% interest in Venture revenues.

3.  Summary judgment is **GRANTED** in Plaintiff and Third-Party Defendants' favor on the Stein Parties' claims for conversion, fraud, tortious interference with contract, and unfair and deceptive trade practices.

4.  Plaintiff and Third-Party Defendants' Motion is **DENIED** in all other respects.

---

[8] The Court recognizes that it reached a contrary result in its prior Order Denying Motion to Dismiss. See DE 39. In that Order, the Court rejected the Stein Parties' limitations argument in part because it was unclear from the pleadings when Pharma Supply had paid the allegedly unreasonable legal fees. Id. at 6. However, Pharma Supply's interrogatory responses now reflect that the last such payment took place during the DDI Litigation on December 15, 2011. See DE 139-5 at 4.

It is further **ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment [DE 221] is **GRANTED in part and DENIED in part** as follows:

1.  Summary judgment is **GRANTED** in Defendants' favor with respect to Count II of Pharma Supply's Complaint.

2.  Defendants' Motion for Summary Judgment is **DENIED** in all other respects.

It is further **ORDERED AND ADJUDGED** that the Motion to Strike Defendants' Response to Plaintiff and Third-Party Defendants' Motion for Summary Judgment [DE 237] and Motion to Strike Additional Untimely Documents [DE 242] are **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 2nd day of June, 2015.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF